IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:17-cv-01703-LTB-KMT

KALMAN FLOOR COMPANY,

    Plaintiff,
v.

OLD REPUBLIC GENERAL INSURANCE CORPORATION,

    Defendant.

---

ORDER

---

This matter is before me on the Motion for Summary Judgment filed by Defendant Old Republic General Insurance Corporation. ECF No. 47. I have jurisdiction pursuant to 28 U.S.C. § 1332. After considering the parties' arguments and exhibits, I GRANT Defendant's Motion for the reasons set forth below.

## I.    FACTS

This action arises out of an insurance coverage dispute concerning a commercial general liability ("CGL") policy issued by Defendant to Plaintiff. Based on the briefing and evidence submitted, the parties agree as follows, unless noted. Where a dispute exists, I construe the facts most favorable to the nonmovant.

In 2007, Plaintiff was subcontracted to construct over 158,000 square feet of concrete flooring for a cold storage facility. ECF No. 47 at ¶ 1; ECF No. 55 at ¶¶ 1, 2. In turn, Plaintiff contracted with another company to supply concrete under a specified mix design. ECF No. 45 at ¶¶ 7–8; ECF No. 47 at ¶ 5. The parties dispute

1

whether the other company was a subcontractor or merely a supplier. ECF No. 47 at 13; ECF No. 55 at 6–7.

In late 2008, Plaintiff completed the concrete floor installation. ECF No. 47 at ¶ 8. In late 2009, Plaintiff's contractor notified it that pockmarks, or "pop-outs," were apparent on the concrete flooring. *Id.* at ¶ 9; ECF No. 55 at ¶¶ 8–10. The only damage to tangible property in the facility caused by the pop-outs was the concrete flooring itself. ECF No. 57-1 at 3, 27.

On January 31, 2009, Defendant issued a general liability insurance to Plaintiff for one year (the "Policy"). ECF No. 47-2 at 4. The Policy reads in relevant part that Defendant

> a. [W]ill pay those sums that the Insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. . . .
>
> b. This insurance applies to . . . "property damage" only if:
>
> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The . . . "property damage" occurs during the policy period . . . .

*Id.* at 12. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 25. The Policy defines "property damage" in part as "physical injury to tangible property, including all resulting loss of use of that property. . . or [l]oss of use of tangible property that is not physically injured." *Id.* at 26.

The Policy contains provisions that will exclude coverage under certain circumstances, including work done by the insured. The Policy defines "your work"

2

to mean "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." *Id.* at 27. The Policy is amended by endorsement to exclude coverage under "Damage to Your Work," reading as follows:

> 2. Exclusions
>
> This insurance does not apply to:
>
> . . .
>
> l. Damage to Your Work
>
> "Property damage" to that particular part of "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by subcontractors.

*Id.* at 13, 16, 186.

On December 3, 2014, Defendant denied coverage on Plaintiff's claim regarding the contractor's demands to repair or replace the concrete floor. ECF No. 45 at ¶ 14; ECF No. 47 at ¶ 18. On July 13, 2017, Plaintiff initiated this suit—now proceeding under its Third Amended Complaint—seeking declaratory relief under the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57. ECF Nos. 1, 45. In its Complaint, Plaintiff seeks a declaration that the Policy's exclusions do not bar Defendant's coverage under the Policy related to Plaintiff's repair or replacement of the concrete floor and alleges that Defendant breached its contractual duty to defend and indemnify. ECF No. 45 at ¶¶ 21–41.

3

Plaintiff also claims that Defendant breached its duty of good faith and fair dealing, but Plaintiff concedes this claim in its Response. ECF No. 55 at 14 n.3.

## II. LAW

### A. Summary judgment standard of review

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the governing law. *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). Evidence and any reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If it meets this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. at 324.

### B. Contract interpretation

As this is case proceeds under diversity jurisdiction, Colorado substantive law and federal procedural law applies. *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Under Colorado law, the well-established principles of contract interpretation apply, "common usage prevails, and 'strained constructions should be avoided.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)). While a court will examine the entire contract as a whole without viewing clauses or phrases in isolation, more specific provisions control the effect of general provisions. *Id.* (citing cases).

### III. ANALYSIS

Defendant moves for summary judgment on the basis that, under the terms of the Policy, the claim made by Plaintiff: (1) did not constitute "Property Damage"; (2) was not an "occurrence"; and (3) fell under the "your work" exclusion.

Defendant argues that Plaintiff's work alone cannot be considered "physical injury to tangible property" that is caused by an "occurrence." ECF No. 47 at 9, 11. Defendant explains that only non-defective property could be considered damaged in a manner that would trigger coverage in the Policy. *Id.* at 11. Thus, Defendant continues, because the only damage that occurred was to Plaintiff's work—in the form of the pop-outs on the concrete floor—there was no non-defective property that was damaged and Defendant is not required to provide coverage. *Id.* at 9–10.

Defendant adds that Plaintiff has admitted that its work did not physically injure or damage any tangible property besides the concrete flooring. *Id.* at 10.

Similarly, Defendant argues that an "occurrence" under the Policy was not satisfied because applicable law holds that damage resulting from defective work is only an "occurrence" if there is resulting damage to non-defective property. *Id.* at 12.

In Response, Plaintiff mainly relies upon a case in Minnesota to argue that the "your work" exclusion would be illusory if the Policy was interpreted as Defendant urges. ECF No. 55 at 11–14 (citing *Web Const. Inc. v. Cincinnati Ins. Co.*, No. CIV 06-5061(RHK/AJB), 2007 WL 4230751 (D. Minn. Nov. 29, 2007) (unpublished) ("*Web*")).

The court in *Web* dealt with substantially similar facts as here. The court in *Web* decided cross-motions for summary judgment between a general contractor and insurance company with whom the contractor had a policy. 2007 WL 4230751, at *1–3. The issued policy concerned the plaintiff's installation of, in part, a concrete slab floor in a manufacturing facility. *Id.* at *1. The plaintiff contracted with another company "for materials and certain services in connection with the installation of the concrete floor." *Id.* Defects appeared after the completion of the concrete floor in the form of pop-outs caused by shale particles present in the aggregate of the concrete. *Id.* at *2.

The court in *Web* denied both motions for summary judgment. *Id.* at *1. The court found that it must first determine whether there was an "occurrence" in the case and if there was, it must then determine whether that "occurrence" resulted in

property damage. *Id.* at *5. The court found that there indeed "was an 'occurrence' because the concrete floor defects constituted an accident." *Id.* at *7.

The court continued that the record showed "that [pop-outs] in the concrete floor constitute[d] 'property damage' under the Policy because such defects caused 'physical injury' to the floor." *Id.* The court went on to find that general issues of material fact existed as to whether the company hired to provide certain materials and services for the concrete floor was in fact a subcontractor. *Id.* at *8. It denied summary judgment on this ground. *Id.*

The finding that defects in concrete flooring would necessarily constitute an "occurrence" is in contravention of Tenth Circuit law, where the court, after a review of Colorado law, predicted that "the Colorado Supreme Court would construe the term 'occurrence,' as contained in standard-form CGL policies, to encompass unforeseeable damage to [non-defective] property arising from faulty workmanship." *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282 (10th Cir. 2011), *as amended on reh'g in part* (Dec. 23, 2011) ("*Greystone*").

In *Greystone*, two homeowners purchased a house built by the plaintiff, a general contractor. *Id.* at 1276. Over time, soil expansion led to the house's foundation shifting, which caused extensive damage. *Id.* The plaintiff was insured by the defendant under a CGL policy and the "threshold issue was whether property damage resulting from faulty construction was an 'occurrence' under the terms of the policies." *Id.* at 1276–77.

7

The policy at issue here is substantially similar as to the policy in *Greystone*. *Id*. at 1277–78. The court explained that the policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 1278.

The court explored the importance of the distinction between damage to defective work and damage to non-defective work. *Id*. at 1286. The impetus is that "CGL policies are meant to cover unforeseeable damages—a category that encompasses faulty workmanship that leads to physical damage of [*non-defective*] property." *Id*. (emphasis added).

The court honed in on the distinction between defective and non-defective property, noting that if property was defective at the outset, it would be irrelevant to consider whether there was an "occurrence." *Id*. at 1286, n.11. The solution becomes clear under the Tenth Circuit's analysis: if the property was defective and no other non-defective property was affected, coverage under an "occurrence" would not be triggered. *Id*. at 1286. *See also Cool Sunshine Heating & Air Conditioning, Inc. v. Am. Family Mut. Ins. Co.*, No. 14-CV-1637-WJM-MEH, 2014 WL 7190233, at *3 (D. Colo. Dec. 17, 2014) (summarizing case law establishing that "the cost to repair a defectively installed product does not constitute 'property damage' unless the defective product causes some damage to the property outside of the cost to replace the defective product) (unpublished).

CGL insurance intends to protect businesses from claims from third parties concerning personal injury or property damage resulting from accidents. *United*

*Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959 (10th Cir. 2011) (citing *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007)). A CGL policy should not be confused with a performance bond, which "guarantees the contractor will satisfactorily perform the contract." *Id.* (citing 17 Am.Jur.2d Contractors' Bonds § 1 (2010)) ("[T]he risk that an owner might reject performance as inadequate is a 'business risk' allocated by parties in contract, and is insured by a performance bond, not general liability insurance intended to provide coverage for injuries or damage resulting from 'accidents.'" (quoting *DCB Constr. Co. v. Travelers Indem. Co. of Ill.*, 225 F.Supp.2d 1230, 1231 (D. Colo. 2002))).

Here, in its discovery responses, Plaintiff admitted that it was hired to install the concrete floor. ECF No. 57-1 at 4–5, 27. Plaintiff admitted the pop-outs in the concrete floor "did not physically injure or damage any tangible property other than the floor system [it] installed." *Id.* at 3, 27. Thus, under the terms of Policy, property damage did not occur.

As the court in *Greystone* explained, a CGL begins with a broad grant of coverage followed by exceptions and exclusions, but "it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought." 661 F.3d at 1289 (quoting David Dekker et al., The Expansion of Insurance Coverage for Defective Construction, 28 Constr. Law., Fall 2008, at 19–20).

Plaintiff argues that the subcontractor exception to the "your work" exclusion would be rendered illusory if damage to Plaintiff's work alone could not constitute

9

property damage caused by an occurrence. ECF No. 55 at 13–14. However, as the court in *Greystone* noted, this exclusion and exception interplay is illusory if the damage is to *non-defective* work, which is not the case here. 611 F.3d at 1289.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED, the case is DISMISSED WITH PREJUDICE, and costs are awarded to Defendant.

Dated: January 8, 2019 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE